IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MALACHI MAHBOUB,

        Plaintiff,

v.                                          CV 19-1216 JHR

ANDREW SAUL, Commissioner
of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This is an appeal of the Commissioner's Final Decision denying Social Security benefits to Plaintiff Malachi Mahboub. [Doc. 1]. The parties consented to the undersigned Magistrate Judge resolving their dispute and entering Final Judgment pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b). [Docs. 3, 5, 6]. The case is now before the Court on Mr. Mahboub's Motion to Reverse and Remand with Supporting Memorandum [Doc. 18], fully briefed on September 14, 2020. [Docs. 22, 23]. Having reviewed the parties' briefing and the relevant portions of the Administrative Record ("*AR*"),[1] the Court **denies** Mr. Mahboub's Motion and **affirms** the Final Decision of the Commissioner.

## I.    INTRODUCTION

Mr. Mahboub successfully worked full-time for years in restaurants and as a self-employed tattoo artist. He claims to now be totally disabled by psychological afflictions (visual and auditory hallucinations) that have plagued him since childhood. The administrative law judge ("ALJ") who held the hearing in this case was troubled by the inconsistencies in Mr. Mahboub's testimony and

---

[1] Documents 14 through 14-10 comprise the sealed Certified Transcript of the Administrative Record ("*AR*") for this appeal. The Court cites the Record's internal pagination, rather than the CM/ECF document and page numbers assigned when it was filed in this Court.

the objective evidence, and the ALJ who ultimately authored the decision denying his claims found that Mr. Mahboub's testimony was inconsistent with the activities he admits he can do as well as other record evidence. Mr. Mahboub now appeals the Commissioner's denial of his applications, asserting that the second ALJ: violated law by failing to explain why he didn't hold or consider holding a supplemental hearing; failed to support the weight given to a consultative examiner's opinion; failed to incorporate all limitations found by the state agency reviewing physicians; manipulated Mr. Mahboub's residual functional capacity ("RFC") to support a finding of nondisability; and, failed to support his evaluation of Mr. Mahboub's symptoms with substantial evidence. Having reviewed the arguments of the Commissioner in response and carefully studied the relevant portions of the administrative record, the Court finds the ALJ's decision to be legally sound and supported by substantial evidence, requiring affirmance.

## II.    BACKGROUND

Mr. Mahboub applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Act on November 15, 2016. [*AR* at 236-253]. Mr. Mahboub alleged a disability onset date of July 10, 2016, due to, as summarized by the Administration, "seizures, hiatal hernia, GERD, high acid producer, [l]ow back problems, [h]allucinations, depression, anxiety, [and] panic attacks." [*See AR* at 98, 112, 247]. The Administration denied Mr. Mahboub's applications at the initial and reconsideration stages of review, so he requested a de novo hearing before an administrative law judge ("ALJ"). [*See AR* at 97-174]. ALJ Stephen Gontis held a hearing on Mr. Mahboub's applications on September 12, 2018, at which Mr. Mahboub and a Vocational Expert ("VE") were questioned by ALJ Gontis and Mr. Mahboub's attorney, who continues to represent him in this appeal. [*See AR* at 45-96].

At the hearing, Mr. Mahboub's attorney agreed that the record was complete, even containing some duplicates which could be omitted. [*See AR* at 47-52]. Mr. Mahboub then answered questions posed by the ALJ and counsel.

Mr. Mahboub testified that the main reason he cannot work is because of episodes, panic attacks and audio and visual hallucinations. [*AR* at 58].[2] At the time of the hearing he was living with his mom and had been for about six months, having moved back after living with his girlfriend. [*AR* at 53-54 (explaining that he moved in with his mom because he and his girlfriend "were having problems and issues.")]. Mr. Mahboub testified that he has a driver's license but stopped driving roughly a year before the hearing, or around a year and two months after he stopped working. [*AR* at 55]. He stated that he stopped working because he "had a bad episode" where he walked off the job because he believed everyone was talking about him. [*AR* at 54].

Mr. Mahboub explained that he suffers from panic attacks and visual and audio hallucinations as well as paranoia. *AR* at 55, 70. He hears "lots of things … in the distance" but also "close by." [*AR* at 58]. When he is in a group of people, "then it's everyone is like talking about me or everyone is against me." [*AR* at 59]. The voices are "what really bothers" him. [*AR* at 81]. He stated that they are constantly "picking on" him, telling him "how worthless" he is and "how [he] can't do nothing[,]" [*AR* at 82], but also testified that he "can't understand what they say, mostly chatter[.]" [*AR* at 71]. It's like he's hearing voices in the distance and, though he can't make out what they are saying, he gets the feeling it's about him. [*AR* at 71]. To cope with his symptoms Mr. Mahboub always carries a drawing pad with him, even drawing while speaking with his attorney and waiting in the lobby before the hearing. [*AR* at 68]. Music also helps "drown

---

[2] Mr. Mahboub also "sometimes" experiences back pain that he said he cannot treat with injections because of interactions with his prescribed mental health medications, and seizures which, while not a "current problem," deter him from driving. [*AR* at 67-69]. He also has a hiatal hernia which requires strict dietary restrictions. [*AR* at 70].

out some of the noise." [*AR* at 68]. As for visual hallucinations, he sees faces, people, "different body parts," [*AR* at 69], "demons, [and] shadows that move in ways they're not supposed to." [*AR* at 71]. He testified that he experiences these auditory and visual hallucinations every day, all day. [*AR* at 68-69]. His sleep at night is "horrible." [*AR* at 70].

Mr. Mahboub believed he would need assistance managing benefits if they were awarded because his girlfriend and ex-wife always managed his money. [*AR* at 73]. He graduated high school and attended one semester of community college before dropping out because his ex-wife got pregnant with their daughter. [*AR* at 55]. He stated that his symptoms interfere with his relationships but admitted that he had recently begun seeing his girlfriend again. [*AR* at 72].

Mr. Mahboub explained that he has experienced his current psychological symptoms for his "whole life" but managed to work full-time until his onset date because "when [he] was younger, [his] bosses used to put up with [him] more because [he] could …. do the work." [*AR* at 59]. Mr. Mahboub testified that he has worked as a meat cutter, butcher, baker, and cook in stores and restaurants, and as an independent licensed tattoo artist. [*See AR* at 56-59]. Mr. Mahboub stated that a previous employer "kind of tolerated [him] and kind of tried to understand[,]" and that when he was working as a tattoo artist he could "go outside" if he needed to. [*AR* at 59]. He has looked for work since the incident but was unsuccessful. [*AR* at 55]. He acknowledged that he has two felony convictions from around 2012 and 2014 that could be affecting his job prospects but also agreed that he has been hired since as a tattoo artist and by restaurants despite his convictions. [*See AR* at 60-61, 80].

Mr. Mahboub has received counseling and medication management for at least four or five years. [*AR* at 62]. Counseling helps at times, but it is hard for Mr. Mahboub to talk and trust people and he did not have a set counselor; at the time of the hearing he was attempting to change

providers to consolidate his counseling and psychiatric care. [*AR* at 62-63]. Among other medications Mr. Mahboub is prescribed Risperidone (an antipsychotic). [*AR* at 63]. He testified that he has been diagnosed with schizophrenia, but the ALJ pointed out that at least some of the counselors Mr. Mahboub has seen documented substance abuse psychotic disorder, with schizophrenia appearing in his records later in 2017. [*AR* at 64]. Mr. Mahboub denied illicit drug use for "years" and testified that he just completed blood work for a new psychiatrist, also being drug tested while on probation. [*AR* at 65].

Mr. Mahboub stated that he spends his time drawing, cleaning the house for his mom and going with her if she needs to go anywhere. [*AR* at 82]. He did not believe that he could work in an environment with less personal interaction because the voices cause him to lose focus on what he is attempting to do. [*AR* at 82]. He was unable to say whether a more supportive employer would help. [*See AR* at 85].

The VE categorized Mr. Mahboub's past work as cook, butcher, and baker. [*AR* at 86]. Relevant here, the ALJ asked her if a person who "is limited to performing simple, routine tasks using judgment and simple work-related decisions, only occasional interaction with supervisors, occasional interaction with coworkers, and only infrequent superficial interaction with the public, [and] few changes in a routine work setting[,]" could perform Mr. Mahboub's past relevant work. [*AR* at 87]. The VE replied that such a person could not perform Mr. Mahboub's past work but should be able to work despite the mentioned restrictions as an inspector, packer, or agricultural produce sorter. [*AR* at 87]. Mr. Mahboub's attorney asked the VE whether such a person would be able to work if an inability to interact with supervisors or effectively take direction for up to 15% of the day was added, and, after clarifying counsel's question, the VE responded that such an individual could not maintain competitive employment. [*AR* at 89-90].

ALJ Gontis concluded the hearing by expressing his concerns, particularly about Mr. Mahboub's ability to work for years with the same symptoms he presently claims are disabling. [*See AR* at 90-92]. He pointed out that Mr. Mahboub successfully communicated during the hearing while recognizing that an episode which would preclude employment was possible. [*AR* at 93]. He also noted that Mr. Mahboub had applied for work during the relevant period, presumably thinking he could do it. [*AR* at 93].

After the hearing Mr. Mahboub's case was reassigned to ALJ Michael Leppala, who issued an unfavorable decision on March 14, 2019. [*AR* at 19-44]. Mr. Mahboub, through counsel, asked the Appeals Council to review ALJ Leppala's decision, arguing that ALJ Leppala did not hear the case and so should not have issued the decision, failed to comply with social security rulings, manipulated the RFC, and failed to properly weigh medical opinions. [*AR* at 233-234]. The Appeals Council denied Mr. Mahboub's request for review on October 30, 2019, [*AR* at 1-3], making ALJ Leppala's decision the Final Decision of the Commissioner for the purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Mr. Mahboub timely initiated this action on December 30, 2019, and, after extensions, briefing was completed on his Motion to Remand on September 14, 2020. [Docs. 1, 13, 17, 18, 20, 22, 23, 24]. This Court has jurisdiction to review the Commissioner's Final Decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

### III.   THE COMMISSIONER'S FINAL DECISION

A claimant seeking social security benefits under the Act must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(l)(A),

1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]

Preliminarily, ALJ Leppala noted that no additional hearing or record development was requested by Mr. Mahboub (although it is unclear that Mr. Mahboub received notice that the case would be reassigned) and that, although he did not conduct the hearing, he reviewed the record before rendering a decision on Mr. Mahboub's applications. [*AR* at 22]. At step one, he found that Mr. Mahboub has not engaged in substantial gainful activity since his July 10, 2016 alleged onset date. [*AR* at 25]. At step two, he determined that Mr. Mahboub has the following severe impairments: "bipolar; depression; substance induced psychotic disorder; epilepsy; anxiety; and schizophrenia[.]" [*AR* at 25]. At step three, ALJ Leppala concluded that Mr. Mahboub's combined impairments do not meet or medically equal the regulatory "listings" that presumptively establish disability. [*AR* at 26-28]. In reaching this conclusion ALJ Leppala noted ALJ Gontis' observation that, while Mr. Mahboub claims to have issues with concentrating, persisting, and maintaining adequate pace, he was able to focus and answer questions throughout the hearing without any problem. [*See AR* at 27]. Mr. Mahboub does not challenge ALJ Leppala's findings at steps one through three in this appeal. [*See generally* Docs. 18, 23].

When a claimant does establish disability at step three the ALJ must determine the extent to which he remains able to work – his residual functional capacity ("RFC") – before proceeding to identify past jobs he can still do, at step four, or other jobs he remains capable of despite his limitations, at step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the least an

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*. *See* 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

individual can do despite his or her limitations or restrictions, but the most." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Mahboub retains the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [he] can never climb ladders, ropes, or scaffolds. He can never work at unprotected heights, and he can only occasionally work around dangerous moving mechanical parts. [Mr. Mahboub] can only occasionally operate a motor vehicle. **He is limited to performing simple routine tasks, using judgment in simple work-related decisions. [He] is limited to only occasional interaction with supervisors, only occasional interaction with coworkers, and only infrequent, superficial interaction with the public. He can tolerate few changes in a routine work setting.** His need for time off task would be accommodated with normal breaks.

[*AR* at 28 (emphasis added)]. The bolded language reflects, verbatim, the limitations ALJ Gontis imposed on the hypothetical individual when questioning the VE during Mr. Mahboub's hearing. [Compare *AR* at 87].

Consistent with the VE's testimony at the hearing ALJ Leppala found that Mr. Mahboub's RFC precludes his past relevant work. [Compare *AR* at 37 with *AR* at 87]. He further adopted the VE's opinion at step five, finding that Mr. Mahboub remains capable of working as an assembler, inspector and packager, and agricultural produce sorter. [Compare *AR* at 38 with *AR* at 87].[4] As such, ALJ Leppala determined that Mr. Mahboub is not disabled as defined in the Social Security Act, and he denied benefits under Titles II and XVI. [*AR* at 39].

## IV. <u>LEGAL STANDARDS</u>

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d

---

[4] ALJ Leppala notes that the VE misspoke during the hearing, confusing the DOT number of an inspector job with that of assembler but otherwise providing "overall, accurate information." [*AR* at 38]. Mr. Mahboub does not disagree with this characterization or argue that this error harmed him.

569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Court must "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted). The Court reviews only the sufficiency of the evidence, not its weight. *Oldham v. Astrue*. 509 F.3d 1254, 1257 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,] [and] requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[.]" *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

## V.    ANALYSIS

As noted, Mr. Mahboub claims that ALJ Leppala should have held a supplemental hearing and, by failing to do so, violated the regulations, agency policy, and due process. [Doc. 18, pp. 6-8]. He further asserts that the ALJ failed to properly evaluate his RFC by not incorporating Drs. Parmley and Mohney's recommendation that Mr. Mahboub be restricted to "[a] workplace with well-defined expectations and limited interpersonal interaction[,]" in his RFC [*id.*, pp. 8-9], and by giving only "limited weight" to Dr. Draper's opinions that Mr. Mahboub's "sustained concentration and persistence are impaired" and he "is not able to interact appropriately with supervisors, coworkers or the public[.]" [*Id.*, pp. 9-11]. Mr. Mahboub also claims that ALJ Leppala "manipulated the RFC finding to support an unfavorable decision[] because he found moderate limitations in Mr. Mahboub's ability to interact with others at step three but then found that he could occasionally interact with supervisors and coworkers when formulating his RFC despite

being restricted to "infrequent and superficial" interaction with the public. [*Id.*, pp. 11-12]. Further, Mr. Mahboub asserts that ALJ Leppala's assessment of his subjective symptoms was unsupported by substantial evidence because "there is conflicting information with how long Mr. Mahboub is able to sustain the activity" and because Mr. Mahboub mostly draws at home, stopped driving a year prior to the hearing, testified in accord with Dr. Draper's assessment that he cannot manage his own money, and "reported not spending time with others and isolating himself." [*Id.*, pp. 12-13]. Thus, Mr. Mahboub asserts that the ALJ failed to consider the regulatory factors when discounting the weight afforded to Mr. Mahboub's statements. [*Id.*, p. 13].

The Commissioner responds that ALJ Leppala's RFC is supported by substantial evidence and the regulatory factors for weighing evidence, he permissibly rejected Mr. Mahboub's allegations concerning the limiting effects of his symptoms because they were inconsistent and unsupported by the record, and he was not required to hold an additional hearing under the present circumstances. [Doc. 22, pp. 5-15]. As to this final point, the Commissioner argues that ALJ Leppala complied with agency policy by reviewing all of the evidence of record including the hearing transcript, and that a subsequent hearing was unnecessary because ALJ Leppala did not need further expert evidence or additional testimony by Mr. Mahboub to decide his claim. [*Id.*, p. 15].

Mr. Mahboub's reply brief asserts (incorrectly) that the ALJ gave a single invalid reason for giving limited weight to Dr. Draper's opinions, posits that the ALJ's RFC limitations as to people are unsupported because "the record supports a difficulty with interaction regardless of the type of … person he is interacting with[,]" argues the ALJ mischaracterized his daily activities, and broadly concludes that the decision is unsupported by pertinent law or substantial evidence.

[*See* Doc. 23, pp. 1-3]. For the following reasons, the Court rejects Mr. Mahboub's arguments and affirms the Final Decision of the Commissioner in its entirety.

**A) There was nothing requiring ALJ Leppala to hold a supplemental hearing; and, even assuming there were, due process was not denied because Mr. Mahboub does not identify evidence that was not considered nor any additional evidence he would have introduced before the Final Decision issued.**

Citing regulations, social security rulings and HALLEX,[5] Mr. Mahboub generally asserts that ALJ Leppala's conclusions about the weight given to his subjective symptoms were unsupported because he was not present at the hearing to hear Mr. Mahboub testify. [*See* Doc. 18, pp. 6-8]. The issue is thus whether ALJ Leppala was required to hold a supplemental hearing under the rules and regulations Mr. Mahboub cites or at least "assess" whether one was necessary and, if he was, whether his failure to do either of these things sufficiently harmed Mr. Mahboub to require reversal.

Turning first to the regulations that Mr. Mahboub cites, 20 C.F.R. § 404.929 is a general statement about hearings before ALJs and *could* be construed to state that the ALJ who holds the hearing will also issue the decision based on the evidence in the hearing record. However, its language is far from mandatory. *See id.*[6] 20 C.F.R. § 404.944 offers no more aid to Mr. Mahboub's argument as it simply states that an ALJ "*may* reopen the hearing … to receive new and material evidence." *Id.* (emphasis added). As mentioned, Mr. Mahboub does not identify what new and

---

[5] HALLEX is the Commissioner's "Hearings, Appeals, and Litigation Law Manual," a set of internal guidelines for processing and adjudicating claims under the Social Security Act. *See* <http://ssa.gov/OP_Home/hallex.html>. It is unclear whether HALLEX creases judicially enforceable rights in this circuit. *See Lee v. Colvin*, 631 F. App'x 538, 543 (10th Cir. 2015) (unpublished) (Noting that the Ninth Circuit does not permit relief based on HALLEX violations and assuming without deciding that issue that relief should be denied for failure to establish prejudice).

[6] Section 404.929 states in pertinent part that "[i]f you are dissatisfied with one of the determinations or decisions listed in § 404.930, you may request a hearing. Subject to § 404.956, the Deputy Commissioner for Hearings Operations, or his or her delegate, will appoint an administrative law judge to conduct the hearing. If circumstances warrant, the Deputy Commissioner for Hearings Operations, or his or her delegate, may assign your case to another administrative law judge…. The administrative law judge who conducts the hearing may ask you questions. He or she will issue a decision based on the preponderance of the evidence in the hearing record."

material evidence he would have offered at a subsequent hearing, and the regulation does not mandate one upon assignment of a new ALJ. *Id.* In fact, while the regulations themselves appear silent as to reassignment to a new ALJ, they do indicate that the "official record" of a claim includes both a written and audio record of the hearing, which cuts against the need for a repeat hearing in the absence of additional evidence. *See* 20 C.F.R. § 404.591. Further, the regulations only require "the" ALJ to "base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." *See* 20 C.F.R. § 404.953(a).

If the regulations are no help, does HALLEX provide Mr. Mahboub the authority he needs? HALLEX states that if a case is reassigned "to ensure that the claimant will have his or her case heard or decided in a timely manner," the subsequent ALJ "will assess whether another hearing is necessary" unless the decision will be fully favorable. HALLEX § I(2)(1)(55)(F)(2). This language alone appears to make an assessment mandatory but necessitates another hearing only if the new ALJ "requires more information to make a decision." *Id.* (An ALJ "may find another hearing is necessary if … relevant expert evidence is needed … or the ALJ needs additional testimony to fully evaluate a claimant's allegations of pain or other symptoms[.]").

Here, ALJ Leppala (1) documented that Mr. Mahboub did not seek further development of the record during or after the first hearing and (2) stated that he considered the record in its entirety. Clearly, ALJ Leppala determined he could make a fully informed decision based on the available evidence. The Commissioner's actions do not appear to violate HALLEX at all. Mr. Mahboub does not identify what further evidence a second hearing would have revealed. A general reference to the fact that ALJ Leppala was not present to hear Mr. Mahboub testify appears entirely consistent with the specific circumstance that HALLEX intended to address and does not prove

nor even suggest that the ALJ did not consider all of the evidence in the record when rendering the Final Decision.

While the Tenth Circuit has yet to determine whether HALLEX is judicially enforceable, it has indicated that only *prejudicial* violations will entitle a claimant to relief. *Lee v. Colvin*, 631 Fed. Appx. 538, 543 (10th Cir. 2015) (unpublished) (citing *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001)). Mr. Mahboub has not established prejudice even if there was a violation of HALLEX by the Commissioner here. Even if ALJ Leppala was required to hold a second hearing or further explain why he didn't, Mr. Mahboub has not shown that those omissions matter here. The argument elevates procedural perfection over substance, which is not permitted in this circuit. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection."). Therefore, Mr. Mahboub's contention that the ALJ committed reversible error and denied him procedural process by failing to hold a supplemental hearing, or further explain in his decision why he chose not to, is rejected.

**B) ALJ Leppala's decision to give "limited weight" to Dr. Draper's opinions because they were "largely" based on Mr. Mahboub's subjective statements is not reversible legal error because he also relied on the longitudinal evidence, including Mr. Mahboub's mental status examinations, work history, and activities of daily living.**

Mr. Mahboub asserts that ALJ Leppala erred when he discounted consultative examiner John Draper, Ph.D.'s opinions (affording them "limited weight"). [*AR* at 34-35]. Dr. Draper examined Mr. Mahboub at the administration's request on March 13, 2017, concluding that his prognosis is poor to fair "given the severity of his mood instability, auditory hallucinations and delusional belief." [*AR* at 518-521]. He conducted a clinical interview, noting specifically that unless otherwise stated "all historical information in [his] evaluation is based on [Mr. Mahboub's]

statements during the examination[,]" reviewed his records, and completed minor testing like serial sevens and threes. [*AR* at 518-520]. Dr. Draper noted that Mr. Mahboub "evidenced no difficulty following conversation." [*AR* at 520]. Nonetheless, he opined that Mr. Mahboub's

> ability to reason is good but his social judgment is impaired. His understanding is good[,] but his long term and recent memory are poor to fair. Sustained concentration and persistence are impaired. [Mr. Mahboub] was able to complete serial seven's and serial three's but has never been able to focus long enough to read a book. [His] social interaction is fair. He socializes with his girlfriend but no others and he attends no social functions. As far as adaptation, [he] reports that taking medications or focusing on a project seems to help provide relief from symptoms. [Mr. Mahboub's] ability to understand, remember and carry out instructions is mildly impaired. [He] is not able to interact appropriately with supervisors, coworkers or the public due to hallucinations, delusional thoughts and social anxiety. Alcohol and substance use do not appear to contribute to [his] limitations. [He] is not able to manage benefits in his own best interest.

[*AR* at 521]. In other words, Dr. Draper believed that Mr. Mahboub is unable to concentrate and persist at tasks, can only sustain hobbies for around 15 minutes, is "delayed in completing ADLs because of severe distractibility" and cannot be around any people because "he might react to voices by yelling at others around him." [*AR* at 521].

ALJ Leppala was not persuaded. He only gave "limited weight" to the opinion, reasoning that, although Dr. Draper is an acceptable medical source who examined Mr. Mahboub,

> and his opinion is generally consistent with his examination, observations[,] and the results of his testing.… the severe limitations assessed by Dr. Draper appear to be largely based on subjective statements made by [Mr. Mahboub] and are not entirely supported by the longitudinal medical evidence, including mental status examinations, work history, and activities of daily living.
> …
> For example, [Mr. Mahboub] reported he could never finish a book, which Dr. Draper used to support concentration limitations; however, [Mr. Mahboub] and his girlfriend have both remarked on his very long periods of focus and concentration on his drawing hobby – he engages in this activity all day long.

[*AR* at 35-37]. Mr. Mahboub claims legal error, arguing that ALJ Leppala's citation of Dr. Draper's reliance on his subjective statements is an invalid and illegitimate reason to discount the relative

weight his opinion was due in the specialized field of psychology. [*See* Doc. 18, pp. 9-14]. While the Court has doubts about the application of this reasoning here, even assuming error Mr. Mahboub says nothing about the rest of ALJ Leppala's reasoning. [*See id*; *see also* Doc. 23, p. 2]. This silence is ultimately fatal to his argument for reversal.

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . [H]e must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (citations omitted). There are six regulatory factors an ALJ should consider when weighing a medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). As summarized by the Tenth Circuit:

> [w]hen evaluating the opinion of any medical source, an ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (citing *Goatcher v. US. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c)). An ALJ is "not required' to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). However, as compared with agency doctors who only review a claimant's medical records, "[e]xamining medical-source opinions" are "given particular consideration." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Therefore, such an opinion "may be dismissed or discounted, of course, but . . . the ALJ must provide specific, legitimate reasons for rejecting it." *Id.*

Mr. Mahboub does not argue that ALJ Leppala failed to comply with the requirement to weigh Dr. Draper's opinions - nor could he. As noted above, the ALJ considered and summarized the results of Dr. Draper's findings and weighed his opinions several times. [*See AR* at 34-37]. Thus, while Mr. Mahboub disagrees with the ALJ's decision to give "limited weight" to Dr. Draper's opinions, there can be no dispute that the ALJ fulfilled his duty to consider and weigh those opinions. The question, therefore, is whether the ALJ's rationale for giving less weight to Dr. Draper's restrictions is supported by law and substantial evidence - for, if it is, the Court may not re-weigh the opinion or substitute its judgment for the ALJ's. *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

As noted, Mr. Mahboub primarily takes issue with the ALJ's statement that "the severe limitations assessed by Dr. Draper appear to be largely based on subjective statements…." [*Compare* Doc. 18, pp. 10-11 *with AR* at 35]. Courts have noted that relying solely on similar reasons is generally unpersuasive in reference to psychological opinions, and in an unpublished case the Tenth Circuit has acknowledged that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." See *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (unpublished). As such, an ALJ cannot reject a psychological consultative examiner's opinion "solely for the reason that it was based on [the claimant's] responses[.]" *Id.* (citing *Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996)) (emphasis added). "On the other hand, *Thomas* does not stand for the proposition that an ALJ cannot, in determining what weight to assign an opinion, consider that the opinion is based on subjective information provided by the claimant." *Guzman Chavez v. Saul*, 2020 WL 6146443, at *4 (D.N.M. Oct. 20, 2020) (quoted authority omitted). "As long as the ALJ's weighing of a consultative examiner's opinion otherwise finds support in the record as a whole, that weighing should not be disturbed

simply because the ALJ also took note of the fact that the opinion depended in part on the claimant's subjective statements." *Id.* In other words, while the reason is unpersuasive, it is not sufficient to disturb an otherwise properly supported analysis.

Further support for this principle is found in case law permitting a reviewing court to ignore an ALJ's faulty reasoning when conducting its review if his analysis is otherwise supported in its totality. *See, e.g., Lax*, 489 F.3d at 1088; *Bainbridge v. Colvin*, 618 F. App'x 384, 390 (10th Cir. 2015) (unpublished) ("[E]ven if this reason was improper, the other reasons the ALJ gave were more than sufficient for rejecting Dr. Bates's opinion."); *Bills v. Comm'r, SSA*, 748 F. App'x 835, 840 (10th Cir. 2018) (unpublished) ("We agree that this was not a good reason for discounting Dr. Mitchell's opinion regarding Ms. Bills's ability to stand and walk. This misstep, however, is not dispositive because substantial evidence still supports the ALJ's rejection of Dr. Mitchell's opinion of Ms. Bills's standing and walking abilities.").

The Court exercises this discretion here to ignore the ALJ's arguable misstep in noting that Dr. Draper appeared to base his findings on Mr. Mahboub's statements. While the Court's review of Dr. Draper's report shows the statement to be true (whether or not this is the sort of situation contemplated by *Thomas*), assuming error, it was not ALJ Leppala's only reason. As noted above, ALJ Leppala also reasoned that Dr. Draper's opinions "are not entirely supported by the longitudinal medical evidence including [Mr. Mahboub's] mental status examinations, work history, and activities of daily living." [*AR* at 35]. Mr. Mahboub has not challenged any of these reasons, and the Court finds that they are supported by substantial evidence, precluding reversal on this ground.

**C)** **ALJ Leppala did not err by giving "significant weight" to the opinions of the state agency medical consultants but then omitting from Mr. Mahboub's RFC a specific restriction to a "workplace with well-defined expectations and limited personal interaction" because the RFC limits Mr. Mahboub to simple routine tasks,**

**occasional interaction with supervisors and coworkers, and infrequent, superficial interaction with the public and case law does not require "direct correspondence" between the RFC and an opinion, especially where the opinion is not adopted in full.**

In contrast to Dr. Draper, ALJ Leppala gave "significant weight" to the opinions of the state agency medical and psychological consultants who reviewed Mr. Mahboub's applications at the initial and reconsideration stages of agency review, including those of Meagan Parmly, Ph.D. and Carol Mohney, Ph.D., both who opined based on their review of the record that Mr. Mahboub

> is able to understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes in a routine work setting. A workplace with well-defined expectations and limited interpersonal interaction is recommended.

[*AR* at 107, 140]. Mr. Mahboub claims that the ALJ was therefore required "to include all the limitations found by Drs. Parmley and Mohney or explain why he rejected them." [Doc. 18, p. 8]. Mr. Mahboub's focus here is on their assessment that he "would need 'well-defined expectations and limited interpersonal interaction'." [*Id.*].

Mr. Mahboub's quotation belies his position. Drs. Parmley and Mohney never opined that Mr. Mahboub "needs" a workplace with well-defined expectations and limited interpersonal interaction – they merely *recommended* one. [*AR* at 107, 140]. Mandatory and permissive language make all the difference, especially where ALJ Leppala did not fully adopt the opinions. The regulations do not require ALJs "to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a.

As noted, the factors for weighing a medical opinion are: (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the

opinion with the record as a whole; (5) the source's specialization in the area opined to; and (6) "any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Mr. Mahboub does not argue that ALJ Leppala did not weigh the opinions, nor could he. [*See AR* at 35 ("The state agency psychological consultants are acceptable medical sources who are familiar with social security disability standards. Their opinions are consistent with the longitudinal history and overall medical record.")]. Mr. Mahboub is asking the Court to re-weigh them and find that more weight should have been given to the referenced recommendation, a task which the Court may not undertake. *Smith*, 821 at 1266.

Moreover, as the Tenth Circuit has stated, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). This is because "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). As such, even if the Court were to find that more weight should have been given to the opinions it would not immediately follow that the ALJ was required to parrot the language of the opinions to include their recommendation. Relief on this ground is denied.

**D) ALJ Leppala's finding at Step Three that Mr. Mahboub's ability to interact with others is "moderately" impaired does not require a RFC finding that he cannot interact with others and the ALJ's conclusion that he can have occasional contact with coworkers and supervisors but only incidental and superficial interaction with the public is supported by substantial evidence.**

Citing ALJ Leppala's findings at step three that he has moderate limitations in the abilities to understand, remember or apply information, interact with others, concentrate, persist or maintain pace, and adapt, Mr. Mahboub argues that the ALJ consciously manipulated the RFC to

later find he could occasionally interact with supervisors and coworkers but only infrequently with the general public. [Doc. 18, p. 11]. Mr. Mahboub then points to the definition of unskilled work and says he cannot meet that standard if ALJ Leppala's step three findings are incorporated into the RFC. [*Id.*, p. 12]. Having surveyed recent Tenth Circuit caselaw, the Court is not persuaded.

Take, for example, the cases of *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015), and *Bales v. Colvin*, 576 F. App'x 792 (10th Cir. 2014). As here, the ALJs in both *Vigil* and *Bales* found moderate limitations of concentration, persistence, and pace at Step Three; then, in their RFC assessments, they limited the claimants to unskilled work. *Vigil*, 805 F.3d at 1203; *Bales*, 576 F. App'x at 797. In both cases, the Tenth Circuit explained that "a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil*, 805 F.3d at 1203; *Bales*, 576 F. App'x at 798. In *Vigil*, the court noted that, at the "'more detailed' step four assessment of Vigil's RFC, . . . the ALJ found evidence that Vigil had some problems with concentration, persistence, and pace 'such that he could not be expected to perform complex tasks.'" *Vigil*, 805 F.3d at 1203. However, the ALJ reasoned that Vigil retained sufficient memory and concentration to perform at least simple tasks, and accounted for Vigil's moderate problems in concentration, persistence, and pace by limiting him to unskilled work. *Id*. at 1203-04. Despite this finding, the court acknowledged that "there may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id*. However, the court has since reiterated its main point, citing *Vigil* in *Carr v. S.S.A.*, 734 F. App'x 606, 610-611 (10th Cir. 2018) (unpublished) and *Parker v. S.S.A.*, 772 F. App'x 613, 616 (10th Cir. 2019) (unpublished).

Mr. Mahboub cites *Vigil*, arguing generally that a limitation to simple work is insufficient to address a claimant's mental impairments, but he does not address subsequent cases like *Carr*

and *Parker*. The issue is whether ALJ Leppala's RFC finding, which limits Mr. Mahboub to "simple routine tasks, using judgment in simple work-related decisions[,]" is sufficient to encompass his moderate mental limitations as a matter of law where recent binding decisions permit ALJs to use similar language and Mr. Mahboub does not identify which particular mental limitation was omitted from the ALJ's formulation of his RFC. The Commissioner argues that the ALJ's RFC for simple routine tasks and limited social interaction accounted for Mr. Mahboub's moderate mental limitations, and the Court agrees.

The moderate limitations complained of come from a form used by the Social Security Administration, the MRFCA, which is broken up into three sections. *See* POMS DI 24510.060. "Section I is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (unpublished) (internal quotation marks omitted). As has been recognized by the Tenth Circuit:

> The purpose of Section I is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation.... **It is the narrative** written by the psychiatrist or psychologist **in section III ... that adjudicators are to use as the assessment of RFC.** Adjudicators must take the RFC assessment **in section III** and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the demands of past work or other work.

*Nelson v. Colvin*, 655 F. App'x 626, 628–29 (10th Cir. 2016) (quoting SSA, Program Operations Manual System (POMS), DI 25020.010 B.1 (emphasis in original)). The purpose of Section III is to state, among other things, "[t]he **extent** to which the individual **can** still **perform** and **sustain** specific mental activities and mental functions." POMS DI 24510.061 (emphasis in original). Thus, "[i]t is the narrative written by the psychiatrist or psychologist in Section III that adjudicators

are to use in the assessment of RFC." *Carver*, 600 F. App'x at 619 (citation omitted); *see also*

*Nelson*, 655 F. App'x at 628 (citing POMS, DI 25020.010 B.1).

The Tenth Circuit has made clear that, so long as a consultant's Section III findings reflect Section I limitations, a reviewing court is to "compare the administrative law judge's findings to [the doctor's] opinion on residual functional capacity, not her notations of moderate limitations." *Smith*, 821 F.3d at 1269 n.2. For example, in *Smith*, the plaintiff argued that the ALJ failed to include the following nonexertional (Section I) moderate impairments found by the Administration's nonexamining consultant:

- maintain concentration, persistence, and pace,
- remain attentive and keep concentration for extended periods,
- work with others without getting distracted,
- complete a normal workday and workweek without interruption for psychologically based systems,
- perform at a consistent pace without excessive rest periods,
- accept instructions and respond appropriately to criticism by supervisors,
- get along with coworkers or peers without distracting them or engaging in behavioral extremes,
- respond appropriately to changes in the workplace, and
- set realistic goals or independently plan.

*Smith*, 821 F.3d at 1268. The Tenth Circuit disagreed. It reasoned that the ALJ's RFC ("concluding that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks") "incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments" because it was "similar" to the doctor's Section III narrative, which concluded "that Ms. Smith (1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit explained that the Plaintiff's focus on the consultant's moderate Section I findings raised "the wrong question." *Id.* at 1269 n. 2. Rather, "[a]s discussed above, [the consultant's] notations of moderate limitations ***served only as an aid*** to her assessment of residual functional capacity."

*Id.* (emphasis added). In sum, only the Section III narrative must be incorporated by the ALJ. *See Smith*, 821 F.3d at 1269 ("Through these findings, the administrative law judge incorporated the functional limitations of Ms. Smith's moderate nonexertional impairments."); *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) ("While the ALJ didn't parrot Dr. Lev's exact descriptions of Ms. Chavez's limitations, the ALJ did specifically note his overall assessment that Ms. Chavez 'retain[ed] the capacity to do simple tasks.'").

Other courts have declined to follow *Smith*, positing that Section III findings must always *explicitly* account for Section I moderate limitations, or else "the Court would have to find that *Smith* implicitly overrules *Haga* [*v. Astrue*, 482 F.3d 1205 (10th Cir. 2007),] and *Frantz* [*v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007)]." *See Silva v. Colvin*, 203 F. Supp. 3d 1153, 1162 (D.N.M. 2016) (Vidmar, M.J.); *Jones v. Berryhill*, 2017 WL 3052748, at *5 (D.N.M. June 15, 2017) (Fashing, M.J.). However, this Court agrees with Magistrate Judge Fouratt that *Haga*, *Frantz* and *Smith* are reconcilable. *See McDaniel v. Berryhill*, 2017 WL 3052504, at *14 (D.N.M. July 12, 2017) (Fouratt, M.J.). As Judge Fouratt explained in *McDaniel*, "[m]ore recent decisions of the Tenth Circuit have clarified the application of *Haga*[.]" *Id.* These cases, *Vigil* and *Smith*, collectively stand for the proposition that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *McDaniel*, 2017 WL 3052504, at *14 (quoting *Smith*, 821 F.3d at 1269). The same rationale applies to a Section III narrative that inherently accounts for moderate limitations identified in Section I. Thus, an ALJ need not "parrot" a consultant's "exact description of limitations" so long as the ALJ's RFC reflects the consultant's "overall assessment." *See Chavez*, 654 F. App'x at 375 (citing *Smith*, 821 F.3d at 1268–70 & n. 2).

Turning back to this case, simple (or more properly "unskilled") work requires: (1) understanding, remembering, and carrying out simple instructions; (2) making judgments commensurate with unskilled work (simple); (3) responding appropriately to supervision, coworkers, and usual work situations; and (4) dealing with changes in a routine work setting. SSR 96-9p, 1996 WL 374185, at *2 (July 2, 1996). SSRs are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). In his RFC assessment, ALJ Leppala found that Mr. Mahboub can perform each of these requirements with restrictions as noted. The Court is confident that he properly applied the law and that his RFC findings as to Mr. Mahboub's mental limitations are supported by substantial evidence, despite his findings at step three.

**E) The ALJ's decision to give less weight to Mr. Mahboub's subjective reporting is consistent with law and supported by substantial evidence such as inconsistent medical evidence, his ability to drive, shop, go out alone, do some household chores, and draw as a hobby.**

Mr. Mahboub's final argument is that the ALJ failed to follow SSR 16-3p, which governs the administration's process for subjective symptom evaluation. [Doc. 18, pp. 12-14]. He argues that there was conflicting evidence in the record about how long he can sustain his drawing hobby, and that he is restricted to doing so at his home. [*Id.*]. Further, he argues that ALJ Leppala did not properly express how he performs his daily activities, which he testified are limited. [*Id.*]. The Court is not convinced.

This Court begins with the proposition that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P, 2017 WL 5180304, *2. Additionally, "subjective symptom evaluation," formerly known as "[c]redibility[,][7] determinations are peculiarly the province of the finder of fact and will not be

---

[7] The Administration eliminated the use of the term "credibility" from its sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, *2.

overturned when supported by substantial evidence." *Watts*, 2017 WL 4862424, at *3 (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Still, under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and its progeny,

> the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. April 19, 2017) (quoting *Keyes-Zachary*, 695 F.3d at 1166-67). An ALJ is not required to cite to *Luna* if he states its paradigm. *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016). Factors under the regulations relevant to the determination of whether a claimant's pain is in fact disabling include:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 16-3P, 2017 WL 5180304, *7-8; *see Watts*, 2017 WL 4862424, at *3. Findings as to a claimant's subjective pain "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. . . . But we do not require a formalistic factor-by-factor recitation of the evidence." *Watts*, 2017 WL 4862424, at *3 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)). To the contrary, an ALJ need only discuss those factors that are "relevant to the case." SSR 16-3P, 2017 WL 5180304, *8.

"Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities[.]" SSR 16-3P, 2017 WL 5180304, *5. That said, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* Rather, "if we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

*Id.* at *8.

Relevant to this appeal, when formulating Mr. Mahboub's RFC ALJ Leppala discussed a function report he submitted on July 31, 2017, his testimony at the hearing, his medical records spanning from September 10, 2016 through July 5, 2018, the medical opinions in the file, and a third party function report submitted by Mr. Mahboub's girlfriend. [*AR* at 28-36]. Based on this evidence, ALJ Leppala concluded that Mr. Mahboub's statements about the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the record. [*AR* at 31]. ALJ Leppala specifically referenced Mr. Mahboub's assertion at the hearing that his mental health

issues "have been virtually life-long, yet he has been able to maintain employment for many years[.]" [*AR* at 36]. ALJ Leppala also relied on Mr. Mahboub's ability to drive, shop, go out alone, perform some household chores, work as a self-employed tattoo artist, and spend much of his time everyday drawing, suggesting some ability to focus. [*AR* at 36]. As for the medical evidence, the ALJ noted that Mr. Mahboub's treating counselors did not provide consistent diagnoses – finding afflictions ranging from substance-induce psychoactive disorder (from November 9, 2016 to January 3, 2017), to bipolar disorder with psychotic features on January 10, 2017, bipolar disorder without psychotic features on January 31, 2017, and finally schizophrenia almost a year later in December, 2017. [*AR* at 33-34]. Thus, while there may have been conflicting evidence in the record, there was at least substantial evidence supporting the ALJ's decision.

As to Mr. Mahboub's argument that his daily activities are not as robust as ALJ Leppala described, the question is whether the ALJ's findings as to those daily activities were supported by substantial evidence. Having reviewed the evidence ALJ Leppala cites, the Court finds that they were. *See Vigil v. Colvin*, 623 F. App'x 936, 939 (10th Cir. 2015) ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.") (citing SSR 96–7p, at *5). However, even assuming for the sake of argument that ALJ Leppala somehow erred by relying on misstatements about Mr. Mahboub's daily activities, the ALJ's other reasons are supported by substantial evidence. Therefore, the Court will not reverse the ALJ's symptom evaluation or RFC finding on this ground. *See, e.g.*, *Butler v. Astrue*, 410 F. App'x 137, 139 (10th Cir. 2011) ("[W]e need not address this issue, because the ALJ's other reasons provide substantial evidence to support the credibility determination."); *Pickup v. Colvin*, 606 F. App'x 430, 432 (10th Cir. 2015) ("Although we agree with the district court that two aspects of the ALJ's credibility determination are mistaken, 'we conclude that the

balance of the ALJ's credibility analysis is supported by substantial evidence in the record.'")

(quoting *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004)).

**VI.**    **CONCLUSION AND ORDER**

Mr. Mahboub has failed to demonstrate that the Commissioner's decision to deny benefits was tainted by harmful legal error or that it was unsupported by substantial evidence.

Wherefore, **IT IS THEREFORE ORDERED** that Mr. Mahboub's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], is **DENIED** and the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*